UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAMAL HASSAN MULHI and
SUMAIA GAMAL MELHI

       Plaintiffs,

                                  Civil Case No. 21-10804

v.                             Honorable Linda V. Parker

ALEJANDRO MAYORKAS, et al.,

       Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 18)

       This dispute arises from the denial of an immigration petition. Plaintiff Gamal Mulhi ("Mr. Mulhi") challenges the denial of his Form I-130 petition by the United States Citizenship and Immigration Services ("USCIS"), which sought to classify Plaintiff Sumaia Gamal Melhi ("Sumaia"), as his daughter under § 201(b) of the Immigrations and Nationality Act. Plaintiffs initiated this lawsuit on April 9, 2021. (ECF No. 1.) On February 15, 2022, Plaintiffs filed an Amended Complaint, alleging the following: Violation of the Administrative Procedure Act ("APA") and the Immigration and Nationality Act, 5 U.S.C. § 701 et seq. (Count 1); violation of the Equal Protection Clause under the Fifth Amendment of the United States Constitution (Count 2); a violation of the Fifth Amendment

procedural due process (Count 3); and the Declaratory Judgment Act (Count 5).[1] (ECF No. 15.)

The matter is presently before the Court on "Defendants' Motion to Dismiss Amended Complaint." (ECF No. 18.) The motion is fully briefed. (ECF Nos. 19, 20.) Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting in part and denying in part Defendants' motion.

## STATEMENT OF FACTS

Mr. Mulhi is a United States citizen. Sumaia is a citizen of the Republic of Yemen. On May 25, 2017, Mr. Mulhi filed an I-130 petition on behalf of Sumaia, seeking to classify her as his daughter. On March 26, 2018, USCIS issued a "Request for Evidence" ("RFE") and interview notice. (Exhibit D, ECF No. 15-1 at Pg ID 294-95.) On April 11, 2018, Mr. Mulhi attended the interview at the USCIS Office in Detroit, Michigan regarding his I-130 petition. In the interview, Mr. Mulhi testified to being Sumaia's biological father "despite inconsistencies in [his] previous filings." (ECF No. 15 at Pg ID 235, ¶ 83.)

---

[1] The Amended Complaint does not include a claim labeled "Count 4," which the Court will assume was inadvertently omitted by Plaintiffs.

## A. First NOID and Petition Denial

On January 7, 2019, USCIS issued a notice of intent to deny ("NOID") Mr. Mulhi's petition regarding Sumaia.  (Ex. L., ECF No. 1-2 at Pg ID 77-80.)  The notice detailed the reason behind the intent to deny the petition, including that Mr. Mulhi failed to list Sumaia as one of his children in prior immigration documents, which USCIS deemed as "questionable as to [his] truthfulness," and concluded that based on a review of the record, Mr. Mulhi "failed to show that Sumaia . . . is [his] child."  (*Id.* at 78, 79.)  As a result of the denial, USCIS provided Mr. Mulhi with 30 days from the date of notice to submit additional evidence.  (*Id.* at 80.)  On August 6, 2019, after Mr. Mulhi failed to respond to the NOID, USCIS issued a decision and denied the petition based on "abandon[ment]."  (Ex. F, ECF No.15-1 at Pg ID 303-04.)

On January 6, 2021, Universal Genetics DNA Testing Laboratories ("Universal Genetics") submitted a letter to USCIS notifying it that a DNA test was initiated for Mr. Mulhi and Sumaia "for immigration purposes," but the DNA samples had not been received.  (Ex. G, ECF No. 15-1 at Pg ID 309.)  The letter also stated that "due to the ongoing COVID-19 pandemic, all U.S. Embassies and Consulates have been directed by the U.S. Department of State to suspend consular services until further notice, including DNA sample collections." (*Id*.)  On April 9,

2021, Mr. Mulhi filed the original Complaint in this lawsuit "seeking to set aside the denials[2] of the form I-130 [petition]."  (ECF No. 1 at Pg ID 1.)

### B. Second NOID and Petition Denial

On June 22, 2021, USCIS provided a "Service Motion to Reopen and [NOID]" ("Second NOID"), reopening Mr. Mulhi's petition but notifying him that based on the evidence in the record, Mr. Mulhi "failed to establish by clear and convincing evidence that the claimed biological relationship exist[ed]" due to the prior "discrepancies," and would again have 30 days to present additional documentation.  (Ex. J., ECF No. 15-1, at Pg ID 320.)  The Second NOID also noted that "[f]or applicants and petitioners who receive an RFE or NOID dated between March 1, 2020 and June 30, 2021, any responses submitted within 60 calendar days after the response deadline set forth in the RFE or NOID will be considered by USCIS before any action is taken." (*Id.*)

On September 3, 2021, Mr. Mulhi submitted a response to the Second NOID with an attached brief requesting approval of the pending I-130 petition concluding that "evidence in the record overwhelmingly points to the fact that [Sumaia] has met the requirements necessary to qualify as the child of [Mr. Mulhi]."  (Ex. K., ECF No. 15-1 at Pg ID 339.)  Mr. Mulhi also noted that he "voluntarily decided to

---

[2] The original Complaint involved the denial of both Sumaia and Mr. Mulhi's asserted spouse, Gamilah Mohammed Naji's ("Naji") I-130 petitions.  The Amended Complaint removed Naji as a Plaintiff.

conduct DNA testing" and "[a]lthough [Mr. Mulhi] and [Sumaia] began the process to complete DNA *prior* to the issuance of the second NOID, to this date, they are still waiting for the U.S Embassy to schedule them for an appointment to collect their DNA testing."  (*Id.* at 335 (emphasis in original))

On January 6, 2022, USCIS issued a decision denying Mr. Mulhi's petition. (Ex. L., ECF No. 15-1 at Pg ID 354.)  In reaching the decision, USCIS concluded that "considering the record as a whole, the birth certificate does not prove paternity because it was registered more than thirteen (13) years after [Sumaia's] birth, and [Mr. Mulhi] did not meet [sic] submit sufficiently reliable secondary evidence issued contemporaneously with the birth to establish that [Sumaia] is [his] child."  (*Id.*  at Pg ID 356.)  The decision further noted that "[t]he letter from Universal Genetics indicates that DNA testing has been initiated, but is not complete." (*Id.*)  On February 7, 2022, Mr. Mulhi filed the Amended Complaint (ECF No. 15.)

## LEGAL STANDARD

Defendants seek dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  "Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack challenges the sufficiency of the pleading itself.  In that

instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). A factual attack, in comparison, challenges "the factual existence of subject matter jurisdiction." *Id*.

When a factual attack is raised, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id*. "[W]hen a defendant produces evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove [subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain

"detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556. In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  *Weiner v. Klais & Co., Inc.*, 108 F.3d

7

86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).  A court that considers such matters must first convert the motion to dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d).  However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ANALYSIS

### A. Standing

As an initial matter, the Court must address Defendants' standing argument because the Court's authority to decide the other issues raised by Defendants depends on whether Plaintiffs' have standing to sue.  "Standing is 'the threshold question in every federal case.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 498, 490 (1975)). Without standing, the Court lacks subject matter jurisdiction over this lawsuit. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (citations omitted)

Three elements are required to establish standing under Article III.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 (1992)).  Plaintiffs must allege facts showing that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of . . . [D]efendant[s], and (3) that it is likely to be redressed by a favorable judicial decision."  *Id.* (citing *Lujan*, 504 U.S. at 560-61).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  To be "particularized," the injury must impact "the plaintiff in a personal and individual way."  *Id.* (quotation marks and citations omitted).  A "concrete" injury is one that actually exists.  *Id*. at 340.

Defendants maintain that Plaintiffs lack standing to bring their equal protection claim because while "Plaintiffs detail many allegedly discriminatory procedures applied to Yemeni petitioners, they fail to describe how any of these procedures applied to the decision to deny the petition in this case."  (ECF No. 18 at Pg ID 431.)   Despite Plaintiffs spending a large amount of space in their Amended Complaint detailing generalized problems with the alleged discriminatory procedures, Plaintiffs plausibly allege a violation of the Equal Protection Clause.  Specifically, Plaintiffs note how the "manner in which [USCIS] adjudicates Yemeni I-130 petitions is to avoid a merit-based decision, and to obtain a procedural default . . . in violation of the Constitutional rights [sic] United States

Citizens of Yemini race and/or national origin." (ECF No. 15 at Pg ID 228-29, ¶ 47.) Further, Plaintiffs allege that despite the withdrawal of the prior USCIS PM 602-0064 policy on November 23, 2021, USCIS "continue[s] its discriminatory practices," including the recent denial of the I-130 petition. (*Id*. at Pg ID 231-32, ¶¶ 61-62.) As such, the Court finds that Plaintiffs have sufficiently alleged facts to demonstrate that they have standing to bring their equal protection claims.

### B. Mootness (Equal Protection Claim)

Pursuant to Article III, federal courts may only adjudicate "actual, ongoing controversies." *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "An actual, ongoing controversy exists when there is a 'genuine dispute[ ] between adverse parties, where the relief requested would have a real impact on the legal interests of those parties.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557–58 (6th Cir. 2021) (quoting *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006)). However, if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," then the case is moot, and the court has no jurisdiction. *Libertarian Party of Ohio*, 462 F.3d at 584. "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001).

Defendants maintain that Plaintiffs' claims are rendered moot because 'the -allegedly discriminatory procedures (PM 602-0064) have been withdrawn." (ECF No. 18 at Pg ID 432.) As previously addressed, Plaintiffs' assertion that the alleged unlawful practices have continued demonstrates the existence of an actual, ongoing controversy. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (noting that "voluntary cessation of the alleged illegal conduct . . . does not moot a case and deprive the tribunal of power to hear and determine the case."). Whether Plaintiffs will be able to overcome the heavy burden of proving an Equal Protection Clause violation is a question to be answered through further litigation. *See Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (noting that Plaintiffs must "overcome a heavy burden" of "show[ing] that they were treated differently than those similarly situated in all material respects.")

### C. Plaintiffs' APA Claims

Defendants maintain that Plaintiffs fail to state a plausible claim that USCIS violated the APA when it denied Plaintiffs' I-130 petition. Under the APA, courts should set aside an agency determination only if it is deemed "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997) (citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 375 (1989)); *see also* 5 U.S.C. § 706(2)(A) & (D). An agency decision rises to the level of being arbitrary and capricious if "the agency

11

fails to examine the relevant evidence or articulate a satisfactory explanation for the decision." *See Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42–43 (1983)). "This is a 'narrow standard of review' under which 'a court is not to substitute its judgment for that of the agency.'" *Abdulla v. Cuccinelli*, 840 F. App'x 827, 835 (6th Cir. 2020) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020)). Thus, a court will not overturn an agency's final decision if the agency "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 158 (1962)); *Hosp.-Wayne v. Azar*, No. 18-12352, 2019 WL 5455415, at *5 (E.D. Mich. Oct. 24, 2019).

Plaintiffs raise three arguments as to how USCIS allegedly violated the APA. First, Plaintiffs maintain that USCIS violated the APA by failing to follow its own "mandatory" procedure to "request the optional submission of DNA evidence." (ECF No. 15 at Pg ID 269, ¶ 251.) In support of this argument, Plaintiffs cite to the now withdrawn USCIS Policy Memorandum, PM-602-0064, which stated that, "upon the completion of the systems and records checks, Officers will issue a Request for Evidence ("RFE") for additional evidence to

prove the relationship and of the available options for providing [] secondary evidence, including the voluntary submission of DNA test results, *when applicable*." (*Id.* at Pg ID 221, ¶ 10 (emphasis added).) Based on a plain reading of the language and the phrase "when applicable," the policy allows for USCIS to exercise its discretion when determining whether to include the option of submitting DNA test results. *See cf.*, *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 429 (6th Cir. 2008) (if a contract includes a "qualifying phrase" such as 'if applicable,' the drafter intends to "explicitly make[] that clause conditional"). Thus, USCIS providing the option to petitioners to submit DNA evidence was—when the policy was still in effect—not "mandatory" but at the agency's discretion.

Defendants also note that PM-602-0064 provided specific guidance, where it instructed USCIS to "[i]ssue an RFE requesting secondary evidence of the claimed relationship including the voluntary submission of DNA, when applicable, or when discrepancies or other derogatory information is identified, issue a NOID." (Ex. S., ECF No. 15-1, Pg ID 400.) As Defendants note, and the Court agrees, nothing in the policy expressly required USCIS to present the option of DNA testing to petitioners.[3]

---

[3] Defendants also point to the fact that despite there being no requirement to notify Plaintiffs of the DNA testing option, Plaintiffs received a document entitled

Additionally, Plaintiffs note that because USCIS did not issue a "mandatory request" for DNA evidence, they were precluded from obtaining evidence to support their I-130 application as required by previous policy. (*Id*. at Pg ID 234, ¶ 81.) However, Plaintiffs concede that they successfully began the DNA collection process with Universal Genetics around January 6, 2021, *see id.* at Pg ID 222, ¶ 17, which occurred before USCIS reopened the petition and issued the final denial. This fact contradicts Plaintiffs' argument as it does not appear to the Court that a "mandatory request" was necessary to complete the DNA testing process.

Plaintiffs' underlying issue seems to be the delay in obtaining the DNA test results. As USCIS notes, it does not have any control over the U.S. Embassy in Djibouti or its decision to suspend DNA collections during the peak of the

---

"Instructions for Form I-130—as evidenced by attaching the document as an exhibit to the Amended Complaint—that clearly states the following under section 8(E):

> **E. For parent-child relationships only:** If other forms of evidence have proven inconclusive, ***the petitioner may submit on a voluntary basis other evidence of a birth parent and birth child relationship to include deoxyribonucleic acid (DNA) testing***. DNA test results will only be accepted by USCIS from parentage-testing laboratories accredited by the American Association of Blood Banks (AABB).

(ECF No. 15-1 at Pg ID 388 (emphasis added).) The Court is satisfied that this provided adequate notice of the "optional submission" of DNA evidence.

COVID-19 pandemic.  (*See* Ex. 1, ECF No. 19-1 at Pg ID 436.)  As such, the

delays in the collection of the DNA evidence are not due to USCIS not following

procedures but due to external pandemic-related disruptions, none of which rises to

the level of being arbitrary or capricious.

Plaintiffs' second argument is that USCIS violated the APA by applying the

incorrect standard of review for adjudicating the I-130 petition.  Specifically,

Plaintiffs allege that I-130 petitions are adjudicated under the "preponderance of

the evidence" standard, and by USCIS applying the "clear and convincing"

standard under *Matter of Ma* to their application, USCIS is in violation of the

APA.  (ECF No. 15 at Pg ID 237, 263, ¶¶ 99, 217; *see also* 20 I&N Dec. 394 (BIA

1991).)  In response, Defendants maintain that USCIS not only applied the correct

standard, but that it also has discretion to determine what standard to apply.  Under

8 C.F.R. § 204.1, which is the regulation that provides the boundaries for assessing

evidence in Form I-130 petitions, "[t]he determination of what evidence is credible

and the weight to be given that evidence shall be within the sole discretion of the

[USCIS]."  8 C.F.R. § 204.1(f); *see also Abdulla*, 840 F. App'x at 839.  USCIS'

decision to apply the clear and convincing standard to its I-130 petitions is under

the sole discretion of the agency, and as such, did not amount to an arbitrary and

capricious determination.  *See Matter of Ma*, 20 I&N Dec. 394 (BIA 1991)

(applying the clear and convincing standard to a visa petition for a claimed relative who was not previously identified on other immigration forms).

Finally, Plaintiffs maintain that USCIS engaged in a "deliberate attempt to deny Plaintiffs I-130" when stating in the denial letter that "the only conclusion that can be drawn is that there is no DNA evidence currently available to confirm the claimed relationship."  (ECF No. 15 at Pg ID 236-37, ¶¶ 96, 98; ECF No. 15-1 at Pg ID 356.)  However, in the paragraphs immediately after, USCIS notes the following:

> For the reasons stated above, ***considering the record as a whole***, the birth certificate does not prove paternity because it was registered more than thirteen (13) years after the beneficiary's birth, and you did not meet [sic] submit sufficiently reliable secondary evidence issued contemporaneously with the birth to establish that the beneficiary is your child.
>
> Based on a review of the record, USCIS finds that you have not met your burden of proof in demonstrating, by clear and convincing evidence, that your petition should be approved

(ECF No. 15-1 at Pg ID 356 (emphasis added).)  In detailing "the reasons stated above," USCIS lists, in relevant part, additional findings as to how it reached the decision to deny Plaintiffs' I-130 petition:

> 1. [Sumaia]'s birth certificate was significantly delayed, issued over thirteen years after the listed birth. Such delayed registration is not entirely discrediting, but it is less persuasive and reliable than documentation that is issued contemporaneously with the event.

16

2.  [Sumaia]'s passport biographical page does not directly
identify her parents. Although the last name is spelled
Melhi rather than Mulhi, there is some resemblance to
your name which appears to support your claim.
However, the passport was not issued until 2015, after
the issuance of the delayed birth certificate discussed
above, and is similarly unreliable and unpersuasive.

3.  The academic records pertain only to the academic year
of 2016-2017, after the issuance of the delayed birth
certificate. Significantly, the English translation of this
document does not indicate that you are the father of the
[Sumaia] . . . . [T]his may suggest only that there was a
brief interval in the beneficiary's life where there was
some contact between you.

…

5.  The MoneyGram and Western Union receipts do not give
any sense of continuity of contact or interaction between
you and [Sumaia]

…

7.  During your interview on April 11, 2018 you were asked
why you had not included [Sumaia] in your prior
applications with USCIS. Your explanation was that the
person who filled out the forms didn't add her. This is
unpersuasive for more than one reason.

(*Id.* at Pg ID 356-57.)  The USCIS reached its decision by examining a plethora of

factors and providing detailed explanations. This decision was not arbitrary or

capricious, nor do the facts asserted by the Plaintiffs demonstrate an abuse of

discretion.  As such, the Court finds that Plaintiffs failed to state a claim regarding

any violations of the APA.

17

### D. Plaintiff's Due Process Claim

In Count III of Plaintiffs' Amended Complaint, Plaintiffs maintain that USCIS deprived them of their procedural due process rights because USCIS did not postpone the adjudication of the I-130 petition due to the State Department's "prolonged delay and backlogs in collecting DNA samples[,] . . . as they have in the past." (ECF No. 15 at Pg ID 227, ¶¶ 298-99.) The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving individuals of "life, liberty, or property, without the due process of law." U.S. Const. amend. V. The Due Process Clause "clothes individuals with the right to both substantive and procedural due process." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"'Procedural due process' at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). Moreover, due process requires that the notice is "'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance.'" *Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015)

18

(quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314

(1950)).

Defendant maintains that USCIS had no duty to delay adjudication of the I-

130 petition due to Plaintiff's DNA collection impediments.  Plaintiffs failed to

proffer any legal authority or policy requiring USCIS to delay adjudicating the I-

130 petition other than acknowledging that USCIS has used its discretion in other

instances.  Regarding the actual due process requirements,—notice and opportunity

to be heard—USCIS provided adequate notice of its intent to deny the petitions in

the form of both the original NOID and Second NOID, ECF No. 15-1 at Pg ID

297, 327, attached information notifying Plaintiffs of the option to submit DNA

evidence, *see id.* at Pg ID 388, and produced decision letters that notified Plaintiffs

of their appellate rights.  (*Id.* at Pg ID 303-04, 354-57.)   Based on the facts

asserted in the Amended Complaint, nothing implicates, or even approaches the

line of a violation of the Due Process Clause of the Fifth Amendment.   As such,

the Court finds that Plaintiffs failed to state a claim regarding any due process

violations.

## E. Declaratory Judgment Act

Defendants maintain that Count V should be dismissed because the

Declaratory Judgment Act provides a remedial tool and is not an independent basis

for relief.  In response, Plaintiffs maintain that "since this court has jurisdiction

under § 1331, and a cause of action under the APA and the Fifth Amendment of the United States Constitution; the Declaratory Judgment Act remedy is available to this Court in its exercise of discretion." (ECF No 19 at Pg ID 471.) The Court agrees with Plaintiffs. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *see* 28 U.S.C. § 2201. While it is true that § 2201 does not create an independent cause of action, *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), federal courts "must have jurisdiction already under some other federal statute" before a plaintiff can "invok[e] the Act." *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir. 2007).

Despite this Court finding that Plaintiffs failed to state a claim under the APA, Plaintiffs' claim under the Fifth Amendment Equal Protection Clause remains an "actual controversy," which at a minimum, declaratory judgment could "settle the controversy" or "serve a useful purpose in clarifying the legal relations at issue." *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000)) (listing factors the Sixth Circuit considers when determining whether declaratory relief is appropriate).

## CONCLUSION

The Court finds that Plaintiffs have standing to bring their equal protection claims and those claims are not moot due to the existence of an "actual controversy" related to the alleged ongoing discriminatory practices by USCIS in relation to Plaintiff's application denial.  *See Hargett*, 2 F.4th at 557–58.  Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs failed to state a facially plausible claim regarding the existence of any APA violations or a violation of procedural due process.  However, Plaintiffs have sufficiently alleged a claim under the Fifth Amendment Equal Protection Clause and the Declaratory Judgment Act.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 18) is **GRANTED IN PART** as to Plaintiffs' APA and Fifth Amendment Due Process claims and **DENIED IN PART** as to Plaintiffs' Equal Protection Clause and Declaratory Judgment Act claims.

**IT IS FURTHER ORDERED** that Counts One and Three are **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6).  Counts Two and Five may proceed with litigation.

**SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: February 13, 2023

21